## VANOSDALL *v.* HAMILTON.

1. EXECUTION—LEVY—POSSESSION OF OFFICER—CUSTODIAN.
   An officer who has levied upon a stock of goods may preserve
   his possession of the same by placing them in charge of a
   keeper.

2. SAME — LEVY IN EVENING — POSTPONEMENT OF INVENTORY—
   STORE OCCUPIED AS DWELLING.
   Where a levy on a stock of goods is made at 8:30 o'clock
   p. m., when the owner is not present, the officer may take
   possession of the entire stock, and wait until the next day to
   make his inventory and to allow the owner to make his selec-
   tion of exemptions, even though a part of the store building
   is occupied by the owner as a dwelling.

3. SAME—VALIDITY OF LEVY.
   A sheriff, acting under an execution, went to the store of the
   judgment debtor at 8:30 o'clock in the evening of the day on
   which the execution was issued, and notified the clerk of the
   fact and purpose of a levy upon the goods, and indorsed the
   levy upon the execution.    On account of the lateness of the
   hour, he placed the stock in charge of a keeper, and post-
   poned further proceedings to enforce the levy until the fol-
   lowing morning.    In the meantime the custodian was forci-
   bly ejected by the owner.    *Held,* that the levy was valid.

4. Same—Waiver of Levy—Question for Jury.

, Upon the return of the officer the next day, he found the stock in the possession of a creditor, who had been given a chattel mortgage the previous evening. Subsequently the officer brought trover for the goods, claiming that he was denied possession by the mortgagee, and that all his efforts to make an appraisal under the execution were thwarted by the debtor's attorney. The mortgagee denied having taken possession of the goods as against the levy, and claimed that he merely took an inventory under a written agreement with the sheriff that the noninterference of the officer should not "waive any rights said sheriff now has to claim a valid levy on said stock of goods;" that he kept possession for no other purpose; but that the sheriff, after such agreement, made no further effort to take possession or perfect the levy. *Held,* that the question whether there was a waiver of the levy was for the jury.

5. Same—Trover—Dispossession of Officer.

Where, after the levy of an execution, the defendant takes forcible possession from the custodian, the levying officer may bring trover.

Error to Eaton; Smith, J. Submitted October 6, 1898. Decided November 15, 1898.

Trover by John Vanosdall, deputy sheriff of Eaton county, against Herbert H. Hamilton, the Michigan State Bank of Eaton Rapids, and Thomas M. Sloan. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

*J. H. Cole* (*Geer & Williams,* of counsel), for appellant.

*John M. Corbin* (*Huggett & Smith,* of counsel), for appellees.

Long, J. This action of trover was brought by the plaintiff, a deputy sheriff of Eaton county. The court below directed verdict in favor of defendants.

It appears that on April 28, 1897, one Reuben Wood recovered a judgment for $288.06 and $10 costs of suit against

defendant Sloan in justice's court. Execution was issued on the same day, a proper showing having been made therefor; and plaintiff claims that, the execution being placed in his hands, he made a levy immediately upon a stock of goods, furniture, and fixtures belonging to defendant Sloan, situated in his store at Dimondale, that county. Defendant Sloan was not present when the levy was made, and the execution was not read to him until the next day; but plaintiff claims that the clerk of defendant Sloan was in charge of the store at the time, and was notified that a levy was being made, and for what purpose; that, on account of the lateness of the hour, plaintiff placed the goods levied upon in the custody of one Phinney, with the intention of taking further proceedings to enforce the levy on the following morning; that on the same evening, and a short time after Mr. Phinney had been placed in charge of the goods levied upon, he was forcibly ejected from the store building by defendant Sloan, and, when plaintiff went to the store on the following morning, he found defendant Hamilton in possession of the goods, claiming to be acting in behalf of the Michigan State Bank of Eaton Rapids; that Hamilton was cashier of that bank, and that there was with him on that occasion the attorney of the bank; that a demand was made by plaintiff and by the execution creditor, upon all the parties there, for the possession of the goods. What occurred on the next day after the claimed levy is somewhat in dispute. The defendants claim that, on the evening of the alleged levy, defendant Sloan gave a chattel mortgage to defendant Hamilton, as trustee for several creditors, and Mr. Hamilton went to the store to inventory the stock; that he made no pretense that he was there to take possession of the goods as against the levy, but, finding no one in possession but defendant Sloan, who had given the mortgage, he proceeded to make the inventory; that he took and kept no possession except for that purpose; that, while the inventory was being taken, an agreement was entered into between the parties, as follows:

"I hereby agree, as attorney for Herbert H. Hamilton, who claims to be in possession of the stock of goods of Thomas M. Sloan under a chattel mortgage, and is inventorying said stock of goods; also Mr. Clark C. Wood, as attorney for Reuben Wood, as judgment creditor, claims that a valid levy has been made on said goods and merchandise prior to the execution of said chattel mortgage, which is disputed by the said Herbert H. Hamilton; that the fact that the sheriff does not interfere with the possession of said goods, or hinder the said Herbert H. Hamilton from taking said inventory until next Tuesday, that such action shall not waive any rights that said sheriff now has to claim a valid levy on said stock of goods at this date."

This was signed by defendant Hamilton by his attorney, and by defendant Sloan.

It is claimed that this agreement shows that the parties understood that defendant Hamilton was there simply taking an inventory of the stock, upon which he had a mortgage. It is also claimed that the plaintiff did not do anything that was intended as a demand; and that the testimony shows that the plaintiff and the execution creditor did not then insist on the possession of the goods under the levy, and, after making the agreement set forth, made no further effort to take possession or to perfect the levy. It is therefore claimed that this amounted to an abandonment of the levy, though it might have been a good levy at the time. It is also claimed by the defendants that the levy was invalid for two reasons:

1. That the sheriff had no right to take possession of this whole stock, which was worth from $2,500 to $3,000, and keep defendant Sloan out of the store, which was used in part as his dwelling house, and put a stranger in possession of his household, in order to collect this execution out of the stock.

2. That the defendants did not obstruct the levy of the plaintiff at that time, and that they did not thereafter assume such control of the property as to defeat the plaintiff's going on with the levy.

The court below was of the opinion that the levy had

been abandoned by the plaintiff, and from the remarks of
the court it is evident that the verdict was directed for
defendants upon that ground; and counsel for defendants
now insist that the plaintiff's own testimony shows that he
did abandon it.    On the other hand, it is the contention of
counsel for plaintiff that when a demand was made, on the
day following the levy, for the possession of the goods, it
was refused, and defendant Hamilton stated that he did
not recognize the validity of the levy; that the plaintiff
then made an attempt to take an inventory, but was un-
able to secure appraisers on account of the tactics pursued
by the attorney of defendant Sloan; that, being unable to
secure appraisers by reason of such opposition, the agree-
ment was entered into as above set forth, which agreement
was not to be construed as a waiver of any of plaintiff's
rights under the levy.    The plaintiff introduced testi-
mony tending to show that Mr. Wood, acting as attor-
ney for the plaintiff, made the demand for the goods;
that he ordered the defendants out of the store, and was
going to make an inventory, when the attorney for de-
fendant Sloan told the appraisers that they would be
liable to various kinds of actions that could be brought
against them, and that they had better keep out of the
trouble, and upon this the appraisers refused to act; that
four or five different men were procured as appraisers, and
all refused to act after being told by defendant Sloan's at-
torney that they would have trouble if they acted in that
capacity; that defendant Hamilton then refused to give
up the goods, and said he proposed to keep possession.
This testimony was in dispute, the defendants contending
that their only claim was the right to take an inventory,
and not to hold the goods against the levy.    Under these
circumstances the court was, we think, in error in direct-
ing the verdict for defendants.

The levy was made at 8:30 o'clock on the evening of
April 28, 1897, the day on which the execution was issued,
and the levy was indorsed by the officer on the execution.
He took possession of the stock, put it in charge of a cus-

todian, whom defendant Sloan turned out of possession,. and at once gave the chattel mortgage to defendant Hamilton, as trustee. The plaintiff, as shown by his testimony, did all in his power to retain possession after the levy was made. He was in possession by the custodian,. and the custodian was surreptitiously ejected from the premises by the defendant Sloan. Under these circumstances the levy was a valid one. *Roth* v. *Wells*, 29 N. Y. 471; *Beekman* v. *Lansing*, 3 Wend. 446; *Quackenbush* v. *Henry*, 42 Mich. 75. The officer very properly put a keeper in charge, and this was a sufficient precaution to preserve his possession under the levy. *Stilson* v. *Gibbs*, 46 Mich. 215.

The fact that this store was adjoining the dwelling house could not make the levy invalid. The goods were subject to levy. It was the duty of the officer to make it. It is true that he levied upon a large quantity of goods, but the circumstances under which it was made, and the time of day, we think, warranted the officer in taking possession of the stock until the next morning, when he could make his inventory, and defendant Sloan his selection of exemptions. The officer could not be expected to determine at a glance the exact quantity of goods there. He was not permitted to hold possession, as he claims. Whether there was a waiver of the levy was a question of fact for the determination of the jury. The court was in error in determining it as a question of law. The jury should have been instructed that the levy was valid, and that, if defendants refused to surrender possession on the morning after the levy, the plaintiff's right of action was complete, unless he abandoned his levy by consent of the judgment creditor.

Some claim is made that the plaintiff could not maintain trover under the facts shown in this case. If there was no waiver of plaintiff's rights under the levy, we think it clear that the action was properly brought. *Witherspoon* v. *Clegg*, 42 Mich. 484.

The judgment must be reversed, and a new trial awarded.

The other Justices concurred.